**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**U.S. BANK NATIONAL ASSOCIATION,** *not in*
*its individual capacity but solely as Trustee for the*
*RMAC Trust, Series 2016-CTT,*

                                      **Plaintiff,**

                 **-against-**

**ALLEN T. SWEZEY and ELIZABETH SWEZEY,**

                                    **Defendants.**
-----------------------------------------------------------------x

                                **REPORT AND**
                                **RECOMMENDATION**

                                **20-CV-91 (FB) (RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Plaintiff U.S. Bank National Association ("plaintiff" or "U.S. Bank"), in its capacity as Trustee for the RMAC Trust, Series 2016-CTT, brings this diversity action against defendants Allen T. Swezey ("Mr. Swezey") and Elizabeth Swezey ("Ms. Swezey") (collectively, "defendants"),[1] seeking to foreclose the mortgage encumbering real property located at 64 Highland Avenue, Patchogue, New York 11772 (the "Subject Property"). See generally Complaint (Jan. 6, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

       Currently pending before this Court, on a referral from the Honorable Frederic Block, is plaintiff's second motion for default judgment against defendants. See generally Order

---

[1] There is complete diversity between plaintiff (a citizen of Ohio) and Mr. Swezey and Ms. Swezey (citizens of Pennsylvania and Florida, respectively); and the amount in controversy exceeds $75,000.00. See Compl. ¶¶ 2, 5-7; Plaintiff's Memorandum in Support of Second Motion for Default Judgment (Feb. 18, 2022) ("Pl. Mem.") at 6-7, DE #33-1 (clarifying that Ms. Swezey is a citizen of Florida and not of Pennsylvania, as originally alleged in the Complaint); see also 28 U.S.C. § 1332. Plaintiff's citizenship is properly considered in this determination, as plaintiff is the trustee of an express trust and, therefore, is "entitled to bring diversity actions in [its] own name[] and upon the basis of [its] own citizenship." Wells Fargo Bank, N.A. v. Konover Dev. Corp., 630 F.App'x 46, 49 (2d Cir. 2015) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 462 (1980)).

Referring Motion (Feb. 22, 2022) ("2/22/22 Referral Order"); Plaintiff's Second Motion for

Default Judgment (Feb. 18, 2022) ("Pl. Mot."), DE #33; Pl. Mem.  Plaintiff requests that the

Court enter a judgment of foreclosure and sale with respect to the Subject Property, pursuant

to New York Real Property and Proceeding Law ("RPAPL") §§ 1351 and 1354, and award

plaintiff $224,350.13 in damages, plus contractual interest at the rate of 6.740 percent per

annum until entry of judgment, and interest at the statutory rate thereafter.  See generally

Proposed Judgment (Feb. 18, 2022) ("Proposed Judgment"), DE #33-12; see Statement of

Damages (Feb. 18, 2022) ("Statement of Damages") at 2-3, DE #33-11; Pl. Mem. at 1.[2]  For

the reasons that follow, this Court respectfully recommends that plaintiff's second motion for

default judgment be granted in part and denied in part.

## BACKGROUND

On September 21, 2005, Mr. Swezey executed and delivered to Bank of America, N.A.

("Bank of America") a Maximizer Agreement and Disclosure Statement for a credit line of

$35,000.00 (the "Promissory Note").  See Bank of America Maximizer Agreement and

Disclosure Statement dated Sept. 21, 2005 (docketed on Feb. 18, 2022), DE #33-19 at 2-11;[3]

Affidavit of Mario Selva, Assistant Vice President to Rushmore Loan Management Services,

---

[2] As discussed infra, the requested damages amount is comprised of $146,232.59 in unpaid principal balance; $28,409.52 in interest at the purported contractual rate of 6.740 percent per annum on the principal balance, from October 25, 2018, until February 4, 2022; $2,346.94 in hazard insurance disbursements; $26,248.35 in tax disbursements; $19,948.35 in "Property Inspections/Preservation Disbursements" costs; and $1,164.38 in litigation costs.  See Statement of Damages at 2-3.

[3] Despite the Court's admonition against plaintiff's filing of "evidentiary submissions [that] have been combined and docketed in undifferentiated attachments, rather than as a series of discrete, clearly identified documents[,]" Scheduling Order (Dec. 20, 2021) at 1, DE #27 (citations omitted), plaintiff's renewed motion for default judgment includes multiple documents docketed as a single attachment.  For ease of reference, all citations in this opinion that include numbers following the corresponding docket entry (DE #) refer to pages imprinted by the ECF system, as opposed to internal page numbers.

LLC (docketed on Feb. 18, 2022) ("Selva Aff.") ¶ 3, DE #33-13; Pl. Mem. at 2.[4]  To secure repayment of the Promissory Note, Mr. Swezey and Ms. Swezey together executed and delivered to Bank of America a credit line mortgage on the Subject Property (the "Mortgage") in the principal amount of $35,000.00.  See Mortgage dated Sept. 21, 2005 (docketed on Feb. 18, 2022), DE #33-19 at 14-23; Selva Aff. ¶ 3; Pl. Mem. at 2.  On November 9, 2005, the Mortgage was duly recorded in the Suffolk County Clerk's Office, in Liber M00021167, Page 670.  See Mortgage Recording Page dated Nov. 9, 2005 (docketed on Feb. 18, 2022) ("Mortgage Recording Page"), DE #33-19 at 12-13; Compl. ¶ 10; Pl. Mem. at 2; Selva Aff. ¶ 3.  Thereafter, defendants made draws on the credit line aggregating $25,562.36 and payments totaling $10,952.62, yielding a total unpaid principal balance of $14,609.74 as of May 2009. See Business Records Showing Draws on Line of Credit and Defendants' Payments (Feb. 18, 2022) ("Draws/Payments Records") at 2-3, DE #33-20 ("TRNPRN" column of computer-generated loan records showing draws and payments totaling those amounts).

Subsequently, on June 16, 2009, Mr. Swezey executed a modified promissory note (the "Modified Note"), with an increased total credit line of $183,820.00.  See Bank of America Equity Maximizer Agreement and Disclosure Statement dated June 16, 2009 (docketed on Feb. 18, 2022) ("Modified Note"), DE #33-19 at 35-44 (signed by Mr. Swezey, but not Ms. Swezey); Pl. Mem. at 2; Selva Aff. ¶ 4.  On that same day, both defendants executed a document titled "Credit Line Mortgage with Modification Agreement" (the "Modification Agreement"), which increased the home equity line of credit availability to be secured by the original mortgage by an additional $148,820.00 and which resulted in a single lien against the

---

[4] Rushmore Loan Management Services, LLC ("Rushmore") is the loan servicer for U.S. Bank for the loan at issue.  See Pl. Mem. at 10; Selva Aff. ¶ 1.

Subject Property in the maximum aggregate outstanding principal amount of $183,820.00.  See Credit Line Mortgage with Modification Agreement dated June 16, 2009 (docketed on Feb. 18, 2022) ("Modification Agreement"), DE #33-19 at 30-34; Credit Line Mortgage dated June 16, 2009 (docketed on Feb. 18, 2022) ("Modified Mortgage"), DE #33-19 at 45-57.  The Modification Agreement incorporates, by reference, the terms of the modified credit line mortgage (the "Modified Mortgage").[5]  See Modification Agreement ¶ 1, DE #33-19 at 31. On October 27, 2009, the Modification Agreement was duly recorded in the Suffolk County Clerk's Office in Liber M00021876, Page 151.  See Modification Agreement Recording Page dated Oct. 27, 2009 (docketed on Feb. 18, 2022), DE #33-19 at 28-29.

After Mr. Swezey executed the Modified Note (and both defendants executed the Modification Agreement), additional draws were made on the increased credit limit, totaling $169,209.73.  See Draws/Payments Records at 3 ("TRNPRN" column showing $169,209.73 in draws made on the account from June 2009 through November 2009).  As a result, the outstanding principal loan balance increased to $183,819.47—i.e., $0.53 less than the available $183,820.00 credit limit—and remained unchanged until payments were made on the account beginning in October 2015.  See id. at 3-4 (showing no additional payments or draws changing the total unpaid principal balance until October 2015).

Under the terms of the Modified Note and Modified Mortgage, certain monthly payments of principal balance and interest were required to be made until the maturity date of

---

[5] The Modified Mortgage is unsigned by either defendant; plaintiff asserts that defendants were not required to sign this loan document because they executed the Modification Agreement, which expressly includes by reference, and as an attachment thereto, the terms of the Modified Mortgage.  See Pl. Mem. at 3; Modification Agreement ¶ 1, DE #33-19 at 31; Modified Mortgage, DE #33-19 at 56 (stating that the unsigned Modified Mortgage is "Exhibit A" to the Modification Agreement and no signature is required).

4

the loan.  See Modified Mortgage ¶ 1, DE #33-19 at 47-48; Modified Note ¶ 7(C), DE #33-19

at 36.  Defendants made monthly payments from approximately October 2015 to September

2018, thereby reducing the principal balance from $183,819.47 to $147,129.89.  See Pl. Mem.

at 3; Draws/Payments Records at 4-5 ("TRNPRN" column of business records showing a net

decrease in the principal balance of $36,689.58).  However, they failed to make their October

25, 2018, payment, or any other monthly payments thereafter, except for two payments made

on the outstanding principal on May 30, 2019, in the aggregate amount of $897.30, thereby

reducing the total unpaid principal balance to $146,232.59 (the principal amount currently

sought by plaintiff).  See Compl. ¶ 13; Selva Aff. ¶¶ 8, 14; Business Records Showing

Advances and Disbursements (docketed on Feb. 18, 2022) ("Advances/Disbursements

Records") at 140, 143, DE #33-21 (showing previous principal balance as $147,129.89 until

May 2019 when two payments were made in the amounts of $73.98 and $823.32).  The failure

to make the requisite payments constitutes a default under the terms of the loan agreement.

See Modified Mortgage ¶ 8, DE #33-19 at 50; Modified Note ¶¶ 5, 18(A), DE #33-19 at 35,

40.

Subsequently, on May 2, 2019, the Modified Mortgage was assigned to plaintiff as

Trustee for the RMAC Trust, Series 2016-CTT, see Assignment of Security Interest dated

May 2, 2019 (docketed on Feb. 18, 2022) ("Assignment"), DE #33-19 at 26-27; Pl. Mem. at

3; Selva Aff. ¶ 5, and plaintiff came into possession of the Modified Note, Modified

Mortgage, and Modification Agreement, see Compl. ¶ 12; Selva Aff. ¶ 6.  The assignment of

the Modified Mortgage was recorded in the Suffolk County Clerk's Office on May 10, 2019,

under Liber M00023026 at Page 898.  See Assignment Recording Page (docketed on Feb. 18, 2022), DE #33-19 at 24-25.

After having been assigned the security interest and coming into possession of the loan documents, plaintiff sent 90-day pre-foreclosure notices, via first-class mail and certified mail, to each defendant on or about June 26, 2019, at their mutual last known address and at the address for the Subject Property.  See generally RPAPL § 1304 "90 Day" Notices (docketed on Feb. 18, 2022) ("90-Day Notices"), DE #33-14; see Selva Aff. ¶ 9; U.S. Postal Service Mail Receipts (docketed on Feb. 18, 2022) ("USPS Receipts") at 2-9, DE #33-15.[6]  Within three business days of mailing the 90-day pre-foreclosure notices, plaintiff electronically filed a notice with the Superintendent of Financial Services, registering the requisite information with respect to the borrower (here, Mr. Swezey), and the loan at issue.  See RPAPL § 1306 Proof of Filing Statement (docketed on Feb. 18, 2022) ("Proof of Filing Statement") at 2, DE #33-16.  Thereafter, on August 27, 2019, plaintiff mailed another notice of default to defendants via first-class mail.[7]  See Selva Aff. ¶ 11; see generally Notices of Default (docketed on Feb. 18, 2022), DE #33-17.

Plaintiff commenced this action on January 6, 2020, and served defendants, both of whom failed to answer or otherwise respond to the Complaint.  See Summons Returned Executed for Allen T. Swezey (docketed on Feb. 7, 2020), DE #6; Summons Returned

---

[6] See infra note 10.

[7] Unlike the 90-day pre-foreclosure notices, the additional default notices sent to defendants on August 27, 2019 are not mandated by statute; instead, such notices are controlled by the terms of the Modified Mortgage.  See Modified Mortgage ¶ 15, DE #33-19 at 52 (provision governing notices related to the security instrument); Gustavia Home, LLC v. Rice, 16 Civ. 2353 (BMC), 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016) (90-day notice "is the only notice required under RPAPL § 1304" (emphasis in original)).

Executed for Elizabeth Swezey (docketed on Feb. 14, 2020), DE #7.[8]  Following defendants'

failure to respond to the Complaint, plaintiff requested that a certificate of default be entered

against defendants, see Request for Certificate of Default (Mar. 3, 2020), DE #8, and the

Clerk of the Court thereafter entered a notation of default, see Clerk's Entry of Default (Mar.

9, 2020), DE #9.

Due to the COVID-19 pandemic, this case was then stayed until March 29, 2021, to

allow defendants the opportunity to file a hardship declaration, pursuant to the COVID-19

Emergency Eviction and Foreclosure Prevention Act of 2020, 2020 N.Y. Sess. Laws ch. 381

(effective Dec. 28, 2020).  See Order Staying Case (Jan. 26, 2021), DE #13.  Despite having

been afforded several opportunities to do so, defendants failed to file any hardship declaration.

See id.; Electronic Order (Mar. 30, 2021); Scheduling Order (Apr. 23, 2021) ("4/23/21

Order").  After the stay was lifted, plaintiff was directed to move for default judgment by May

10, 2021, and to serve a copy of the Court's order on defendants and file proof of service.  See

4/23/21 Order; Affidavit of Service (May 7, 2021), DE #17.  The Court later extended the

deadline for plaintiff to move for default judgment until May 20, 2021.  See Order [re DE #]16

Motion for Extension of Time to File (May 6, 2021).

On May 17, 2021, plaintiff filed its first motion for default judgment, requesting that

the Court enter a judgment of foreclosure and sale of the Subject Property, pursuant to RPAPL

§§ 1351 and 1354, as well as other relief.  See generally First Motion for Default Judgment

---

[8] The Court has satisfied itself that both defendants were properly and timely served with the Summons and Complaint.  See Summons Returned Executed for Allen T. Swezey (docketed on Feb. 7, 2020), DE #6 (summons and complaint were delivered to Mr. Swezey, through his son-in-law, at Mr. Swezey's Pennsylvania residence on January 27, 2020); Summons Returned Executed for Elizabeth Swezey (docketed on Feb. 14, 2020), DE #7 (summons and Compliant were delivered to Ms. Swezey at her Florida residence on January 29, 2020).

(May 17, 2021), DE #18; Memorandum in Support of First Motion for Default Judgment (May 17, 2021), DE #19.  Following Judge Block's referral of plaintiff's first motion for default judgment, <u>see</u> Order Referring Motion (May 17, 2021), and having reviewed the papers, this Court instructed plaintiff to cure the pervasive deficiencies in its submissions by January 5, 2022,[9] and warned that failure to do so would result in this Court's recommendation that plaintiff's motion be denied with prejudice, <u>see</u> 12/20/21 Order at 3.  On January 5, 2022, plaintiff moved to withdraw its request for default judgment; the Court granted plaintiff's motion and set a deadline of February 18, 2022, for the filing of any renewed motion for default judgment.  <u>See</u> Motion to Withdraw (Jan. 5, 2022), DE #30; Order [re DE #]30 (Jan. 5, 2022).

On February 18, 2022, plaintiff filed and served its second motion for default judgment against defendants, which was likewise referred to the undersigned magistrate judge.  <u>See</u> Affidavit of Service (Feb. 18, 2022), DE #34; 2/22/22 Referral Order; <u>see</u> <u>generally</u> Pl. Mot.; Pl. Mem.  Plaintiff requests that the Court grant it default judgment and enter an order of judgment and foreclosure as to the Subject Property, and award plaintiff $224,350.13 in damages, plus interest.  <u>See</u> Pl. Mot. at 1; Pl. Mem. at 2, 24-26; Statement of Damages at 1-2.

---

[9] These deficiencies included, amongst other issues, plaintiff's unexplained interest calculation, the lack of citations to supporting documents in plaintiff's memorandum of law and affidavit, the unclear differentiation and/or labeling of the loan documents at issue, and the inadequate substantiation of damages; the Court issued several orders instructing plaintiff to remedy these deficiencies.  <u>See</u> Scheduling Order (Aug. 2, 2021) ("8/2/21 Order"), DE #22; Scheduling Order (Dec. 14, 2021) ("12/14/21 Order"); Scheduling Order (Dec. 20, 2021) ("12/20/21 Order"), DE #27.

## DISCUSSION

### I.    Default Judgment Standard

Where the "plaintiff's claim is [not] for a sum certain[,]" the plaintiff seeking default judgment against defendants who failed to answer or otherwise defend the case "must apply to the court" after "the clerk [] enter[s] the party's default." Fed. R. Civ. P. 55(a)-(b). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]" Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). The court need not, however, "agree that the alleged facts constitute a valid cause of action[.]" TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks and citations omitted). Indeed, "before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law." Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

"When deciding [the defendant's liability on a] motion for default judgment, courts have . . . looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]" Chanel, Inc. v. Jean-Louis, No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, at *3 (E.D.N.Y. Dec. 7, 2009) (citations omitted). On a Rule 12(b)(6) motion, courts follow a two-prong approach. See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009). First, the complaint's conclusions of law and formulaic recitations of elements of a cause of action should be disregarded. See id. Second, where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

9

entitlement to relief." Id. at 679. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Nevertheless, "[a] fact is not 'well-pleaded' if it is inconsistent with other allegations in the complaint or is 'contrary to uncontroverted material in the file of the case.'" Lelchook v. Islamic Republic of Iran, 393 F.Supp.3d 261, 264-65 (E.D.N.Y. 2019) (Glasser, J.) (citation omitted).

Although, in deciding motions for default judgment, courts assume the truth of the pleadings' well-pleaded facts as they relate to liability, the facts alleged in a pleading are not assumed to be true in assessing the plaintiff's right to the relief requested. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). In other words, even if a defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or equitable relief. See Greyhound Exhibitgroup, 973 F.2d at 158; S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975). Instead, the relief requested must "be established by the plaintiff" with evidence, Greyhound Exhibitgroup, 973 F.2d at 158, and may not exceed "what is specified in the [complaint's] 'demand for judgment,'" Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). In this regard, the court may rely on "detailed affidavits and documentary evidence" and need not conduct an evidentiary hearing on the appropriateness of the relief requested. Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39-40 (2d Cir. 1989).

II.    **Standing**

Since plaintiff is not an original party to the Modified Note, the Court will first address plaintiff's standing to bring this foreclosure action.  See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." (citations omitted)).  "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'"  Eastern Sav. Bank, FSB v. Thompson, 631 F.App'x 13, 15 (2d Cir. 2015) (quoting Wells Fargo Bank, N.A. v. Rooney, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)).  "Notably, '[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident[.]'"  Id. (quoting U.S. Bank, N.A. v. Collymore, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)).  "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff."  Id. (quoting Wells Fargo Bank, NA v. Ostiguy, 8 N.Y.S.3d 669, 671 (3d Dep't 2015)).

Here, the Complaint alleges that the Modified Mortgage was "assigned to U.S. Bank National Association . . . as Trustee for the RMAC Trust, Series 2016-CTT."  Compl. ¶¶ 11-12; see Selva Aff. ¶ 5.  Moreover, attached to the Complaint are copies of the Modified Note and Modified Mortgage, as well as documentation of the assignment of the security interest from Bank of America to U.S. Bank.  See generally Certificate of Merit Pursuant to CPLR

11

3012-b (Jan. 6, 2020), DE #1-3. Plaintiff has also submitted the affidavit of Mario Selva, the

Assistant Vice President of Rushmore, and Appointed Attorney in Fact for U.S. Bank, who

avers that plaintiff is the owner and holder of the Modified Note. See Selva Aff. ¶ 6 ("U.S.

Bank National Association . . . came into possession of [the Promissory Note, Mortgage,

Equity Maximizer Agreement and Disclosure Statement, and Modification Agreement] on May

1, 2019[,] and remained in possession of the loan documents on January 6, 2020, the date on

which it commenced this residential mortgage foreclosure action."). Hence, plaintiff has

adequately demonstrated that it held the Modified Note when this action was commenced and,

thus, has standing to bring this action. See JXB 84 LLC v. Khalil, 15-CV-6251 (NGG) (JO),

2017 WL 1184001, at *3 (E.D.N.Y. Feb. 17, 2017), adopted, 2017 WL 1184141 (E.D.N.Y.

Mar. 29, 2017); Eastern Sav. Bank, FSB v. Whyte, 13-CV-6111 (CBA)(LB), 2016 WL

236221, at *3 (E.D.N.Y. Jan. 20, 2016); Wells Fargo Bank, N.A. v. Landi, No. 13-CV-5822

(RRM)(JO), 2015 WL 5655810, at *3 (E.D.N.Y. Aug. 14, 2015), adopted, 2015 WL 5657358

(E.D.N.Y. Sept. 22, 2015).

## III.   RPAPL §§ 1304 and 1306 Requirements

Plaintiff has complied with the notice of foreclosure and registration requirements set

forth in RPAPL §§ 1304 and 1306.

### A.   RPAPL § 1304 Notice

Section 1304 requires that "at least ninety days" prior to filing a foreclosure action,

notice be sent "by registered or certified mail and also by first-class mail to the last known

address of the borrower, and to the residence that is the subject of the mortgage." N.Y.

RPAPL § 1304(1)-(2). "The notice must be transmitted via registered or certified mail and

also by first-class mail to the last known address of the borrower[s], and if different, the residence subject to the mortgage[,]" and "[p]roper service of RPAPL [§] 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action." Gustavia Home, LLC v. Hoyer, 362 F.Supp.3d 71, 83 (E.D.N.Y. 2019) (citations and internal quotation marks omitted).  The Second Circuit has recently held that "[c]ompliance with [RPAPL] § 1304 can be 'established with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'"  CIT Bank N.A. v. Schiffman, 948 F.3d 529, 533 (2d Cir. 2020) (citing Citibank, N.A. v. Conti-Scheurer, 98 N.Y.S.3d 273, 277 (2d Dep't 2019)).

In this case, the notices sent by plaintiff to defendants on or about June 26, 2019, contain both the language and the font size mandated by the statute.  See generally 90-Day Notices; see N.Y. RPAPL § 1304(1); Rice, 2016 WL 6683473, at *3.  In support of the assertion that plaintiff has complied with RPAPL § 1304, plaintiff relies on the notarized affidavit of Mr. Selva who, as previously noted, is an employee of U.S. Bank's loan servicer. See Selva Aff. ¶ 1.  Mr. Selva avers that the 90-day pre-foreclosure notices were sent, by first-class and certified mail, to defendants on June 26, 2019 (i.e., more than 90 days before the Complaint was filed on January 6, 2020) at their then last known addresses and at the address of the Subject Property.  See id. ¶ 9; see also id. ¶ 1.  In addition, the Court is in possession of the tracking receipts from the USPS for the certified mailings, which confirm delivery of the

90-day notices at the respective addresses.[10]  <u>See</u> USPS Receipts, DE #33-15 at 2-9.  Thus, this Court is satisfied that, for the purposes of this default judgment motion, plaintiff adhered to the requirements of the statute.[11]

### B.    RPAPL § 1306 Registration

Section 1306 requires that a "lender, assignee or mortgage loan servicer . . . file with the superintendent of financial services . . . within three business days of the mailing of the [section 1304 notice] . . . the information required by subdivision two of this section."  N.Y.

---

[10] Plaintiff has provided documents evidencing its compliance with RPAPL § 1304: (1) an attachment titled "RPAPL §1304 '90 Day' Notices," in which there are four separate mailing envelopes with USPS tracking numbers, <u>see</u> DE #33-14 at 26, 74, 122, 177; and (2) an attachment titled "United States Postal Service Tracking of RPAPL §1304 Notices," which provides confirmation that four discrete mailings were delivered at specified addresses, <u>see</u> DE #33-15 at 2, 4, 6, 8.  With respect to Mr. Swezey, the mailing envelopes included in DE #33-14 reflect that two copies of the 90-day pre-foreclosure notice were mailed to Mr. Swezey at his Pennsylvania residence (USPS #9214890115582644000739299) and at the Subject Property address in New York (USPS #9214890115582644000739312).  <u>See</u> 90-Day Notices, DE #33-14 at 26, 122.  There are also two USPS delivery receipts with corresponding tracking numbers showing that the notice mailed to Pennsylvania was delivered there on June 29, 2019, <u>see</u> USPS Receipts, DE #33-15 at 8, and that the second notice, sent to the Subject Property address in New York, was delivered in "Nashville, TN 37211" on July 8, 2019, <u>see</u> id. at 4.  Given that the tracking numbers for the envelope and delivery receipt for the notice mailed to the Subject Property are the same, the Court presumes that at that time, Mr. Swezey's mail was forwarded to an address in Nashville, Tennessee.

Similarly, as to Ms. Swezey, there are two mailing envelopes showing that notices were sent to her then last known address in Pennsylvania (USPS #9214890115582644000739305), and to the Subject Property address (USPS #9214890115582644000739329).  <u>See</u> 90-Day Notices, DE #33-14 at 74, 177.  A USPS delivery confirmation with the same tracking number as the notice to the Pennsylvania address reflects that delivery to that address was made on June 29, 2019.  <u>See</u> USPS Receipts, DE #33-15 at 2.  The second notice sent to Ms. Swezey, at the Subject Property, however, was ultimately delivered to a "Spring Hill, FL 34606" address (i.e., what appears to be Ms. Swezey's current address), as confirmed by the USPS receipt with an identical tracking number, <u>see</u> id. at 6; it is reasonable to infer that Ms. Swezey's mail was similarly forwarded.  The Court is not aware of any evidence in the record suggesting that <em>at the time the notices were sent,</em> plaintiff had reason to believe that Ms. Swezey's then current address was the Spring Hill, Florida address.  Thus, despite plaintiff's failure to explain the implications of the documentation, the Court concludes that the documentary evidence shows that plaintiff complied with RPAPL § 1304.

[11] According to the Second Circuit in <u>Schiffman</u>, compliance with RPAPL § 1304 can be "established with proof of the actual mailings, <em>such as</em> affidavits of mailing or domestic return receipts with attendant signatures[.]"  948 F.3d at 533 (emphasis added) (internal quotations omitted).  "Neither the language in <u>Schiffman</u>, nor that in the cases on which it relies, intimates that those methods of proving compliance with section 1304 are exclusive."  <u>Empire Cmty. Dev., LLC v. Giambalvo-West</u>, 19-CV-5341 (DLI), 2020 WL 9813022, at *5 n.7 (E.D.N.Y. Mar. 6, 2020).  The Court therefore properly relies on the evidence discussed <em>supra</em>.

RPAPL § 1306(1).  Subdivision 2 mandates that such a filing "include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue."  N.Y. RPAPL § 1306(2).  The Court has reviewed the registration document submitted by plaintiff and concludes that plaintiff has satisfied the requirements under RPAPL § 1306.  See Proof of Filing Statement at 2 (stating that plaintiff complied with RPAPL § 1306 and filed the requisite statement on June 26, 2019); see also Compl. ¶ 16; Selva Aff. ¶ 10.

**IV.   Liability**

Plaintiff is entitled to foreclosure if it establishes "the existence of an obligation secured by a mortgage, and a default on that obligation."  OneWest Bank, N.A. v. Denham, No. CV 14-5529(DRH)(AKT), 2015 WL 5562980, at *5 (E.D.N.Y. Aug. 31, 2015) (quoting Eastern Sav. Bank, FSB v. Beach, No. 13-CV-0341(JS)(AKT), 2014 WL 923151, at *5 (E.D.N.Y. Mar. 10, 2014)), adopted, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); see 1st Bridge LLC v. 682 Jamaica Ave., LLC, No. 08-CV-3401 (NGG)(MDG), 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010) ("682 Jamaica Ave."), adopted, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010).  If those elements are established, the mortgagee has a "presumptive right to [enforce the mortgage], which can only be overcome by an affirmative showing by the defendant."  Denham, 2015 WL 5562980, at *5 (quoting FirstStorm Partners 2 LLC v. Vassel, No. 10-CV-2356 (KAM)(RER), 2012 WL 1886942, at *3 (E.D.N.Y. Mar. 8, 2012), adopted, 2012 WL 1885861 (E.D.N.Y. May 23, 2012)).

In the instant case, plaintiff alleges that Mr. Swezey executed the original promissory note on September 21, 2005, and that both defendants, in order to secure this debt, executed the original mortgage on real property located at 64 Highland Avenue, Patchogue, New York 11772.  See Compl. ¶ 10; see also Selva Aff. ¶ 3.  Plaintiff further alleges that Mr. Swezey executed a second promissory note extending the available credit to $183,820.00 (i.e., the Modified Note) and that, to secure this increased loan amount, both defendants modified the original mortgage by executing the Modification Agreement on June 16, 2009.  See Compl. ¶¶ 9, 11; see also Selva Aff. ¶ 4.  Plaintiff has provided copies of the Modified Note and Modified Mortgage, as well as evidence of the assignment of the security interest to plaintiff.  See Modified Note, DE #33-19 at 35-44; Modified Mortgage, DE #33-19 at 45-57; Modification Agreement, DE #33-19 at 30-34; Assignment, DE #33-19 at 26-27.  As alleged in the Complaint, defendants violated the terms of the Modified Note and Modified Mortgage by failing to make the monthly payment due on October 25, 2018, or any subsequent payment (other than two small payments in May 2019).  See Compl. ¶ 13; see also supra pp. 4-5.  Mr. Selva, as Assistant Vice President for plaintiff's loan servicer, confirms that defendants defaulted as of October 25, 2018.  See Selva Aff. ¶ 8.  Defendants' default triggered plaintiff's right to accelerate the loan and to require payment of the entire outstanding principal.  See Modified Mortgage ¶ 8, DE #33-19 at 50; Modified Note ¶¶ 5, 18(A), DE #33-19 at 35, 40.  No defense has been proffered by defendants, who are in default in this action, and none is apparent to the Court from its review of the underlying documents.  As such, plaintiff has established its entitlement to foreclosure of the Subject Property.

## V.    **Damages**

### A.    **Principal**

Plaintiff requests $146,232.59 in outstanding principal owed on the Modified Note. See Compl. ¶ 14; Statement of Damages at 1.  In support of its request, plaintiff has provided business records showing the loan transaction history; however, these records are not self-explanatory, and plaintiff's memorandum of law fails to account for all of the draws and payments made on both the original and modified credit lines.[12]  See generally Pl. Mem. Notwithstanding plaintiff's counsel's inadequate analysis (and failure to comply with the Court's directive, see 12/20/21 Order), the Court has independently confirmed (using the aforementioned loan records) both that draws were made on the account in the total amount of $183,819.47, and that after $37,586.88 in total payments were made by defendants, the outstanding principal balance owed is $146,232.59, as asserted by plaintiff, see Draws/Payments Records at 2-5 (showing $183,819.47 in draws and $36,689.58 in payments);[13] Advances/Disbursements Records at 140 (showing $897.30 in payments in the "Principal Paid" row).  The Court recommends awarding the undisputed outstanding principal balance, $146,232.59.

Nevertheless, the award of damages should be entered against Mr. Swezey alone and not against Ms. Swezey, who signed the Modification Agreement but not the Modified Note.

---

[12] For example, plaintiff correctly asserts that four draws were made on the increased credit limit in the amounts of $109,217.73, $5,000.00, $10,000.00, and $19,992.00, but fails to account for other draw amounts.  See, e.g., Pl. Mem. at 3.  Plaintiff's memorandum of law is also silent as to how much of the original $35,000.00 credit line was utilized by defendants.  See id.

[13] Plaintiff has identified the "TRNPRN" column of the business records in question as the column documenting the draws and payments made on the credit line.  See, e.g., Pl. Mem. at 25.  Indeed, as discussed infra, the figures in this column correspond to the amounts that plaintiff asserts were drawn on the dates set forth in its memorandum of law.

As an initial matter, plaintiff wholly fails to address why damages are appropriately sought against both defendants, thereby failing to meet its burden at the default judgment stage.  <u>See</u> <u>Greyhound Exhibitgroup</u>, 973 F.2d at 158.  Moreover, the Modified Mortgage refers to Ms. Swezey as a "Borrower," and explicitly provides that:

> [A]ny Borrower who co-signs this Security Instrument but does not execute the Agreement [i.e., the Modified Note] (a "co-signer") . . . is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the [Subject] Property under the terms of this Security Instrument; [and] . . . is not personally obligated to pay the Secured Debt secured by this Security Instrument[.]

Modified Mortgage ¶ 13, DE #33-19 at 52.  While it is true that Ms. Swezey signed the Modification Agreement (which extended the credit limit to be secured by the mortgage), and is therefore considered a "co-signer" under the terms of the Modified Mortgage, she did *not* sign the Modified Note.[14]  Thus, Ms. Swezey's interest in the Subject Property may be foreclosed upon by virtue of the Modified Mortgage, but she is not obligated to pay back the loan *secured* by the Modified Mortgage.[15]  <u>See</u> <u>OneWest Bank N.A. v. Louis</u>, 15-CV-00597 (PAC) (BCM), 2016 WL 3552143, at *8 (S.D.N.Y. June 22, 2016), <u>adopted</u>, 2016 WL 4059214 (S.D.N.Y. July 28, 2016); <u>CIT Bank, N.A. v. Dambra</u>, No. 14 Civ. 3951 (SLT) (VMS), 2015 WL 7422348, at *2 (E.D.N.Y. Sept. 25, 2015), <u>adopted</u>, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).  Accordingly, Ms. Swezey is not liable for any deficiency

---

[14] Although neither Ms. Swezey nor Mr. Swezey physically signed the Modified Mortgage, no signature was required (as discussed *supra*), given that the document was incorporated by reference in, and provided as an attachment to, the signed Modification Agreement.

[15] At best, the Modification Agreement is ambiguous as to whether Ms. Swezey is required to pay back the secured debt, and the ambiguity should be construed against the drafter, Bank of America, plaintiff's predecessor in interest.  <u>See</u> <u>Warner v. Monsour Winn Kurland & Warner, LLP</u>, No. CV 09–3557(SJF)(ETB), 2011 WL 1399130, at *3 (E.D.N.Y. Feb. 18, 2011) ("where the court finds that a contract is ambiguous, it should be construed against the drafter" (citations omitted)), <u>adopted</u>, 2011 WL 1403182 (E.D.N.Y. Apr. 8, 2011).

18

amounts sought by plaintiff, and the Court recommends that damages be awarded only as against Mr. Swezey.

**B.**    **Interest**

Plaintiff seeks interest on the principal balance of $146,232.59, from October 25, 2018 until February 4, 2022, in the total amount of $28,409.52, which plaintiff asserts is calculated based on the (purported) contractual interest rate of 6.740 percent per annum.  See Statement of Damages at 2.  Plaintiff also requests that the Court award interest on the principal balance at 6.740 percent per annum (which plaintiff asserts is $19.99 per day), from February 5, 2022 until entry of judgment, as well as interest at the statutory rate thereafter.  See Proposed Judgment at 3.

As a preliminary matter, the Court notes that in connection with its first motion for default judgment, plaintiff was directed to cure a laundry list of errors and deficiencies with respect to its request for contractual interest on the principal balance, namely, to explain how it had calculated said interest.  The Court's December 14, 2021, Order expressly provided, in relevant part, that:

> Having reviewed plaintiff's motions papers, the Court has identified several deficiencies and inaccuracies with respect to plaintiff's request for $18,618.43 in unpaid accrued interest from October 25, 2018 to October 2, 2020, plus interest at a daily rate of $19.99 thereafter until entry of judgment. See DE #20-6 at 3; DE #20-7 at 1; DE #20-8 at 2. As an initial matter, plaintiff fails to explain how it arrived at the annual interest rate of 6.740% or how it calculated the unpaid accrued interest. The Court also notes that, in the Affidavit of Diana L. Shaner, two different annual interest rates appear to be used in calculating the accrued interest: 6.740% from October 25, 2018 to August 31, 2020 and 4.990% from September 1, 2020 to October 2, 2020. See DE #20-6 at 3. Moreover, the time period for which plaintiff has calculated the $18,618.43 in accrued interest is inconsistent across its submissions: in plaintiff's Statement of Damages, the interest amount is calculated starting on September 25, 2018, see DE #20-7 at 1, but in the Affidavit of Diana L. Shaner the starting date is October 25, 2018,

19

> see DE #20-6 at 3. Finally, even applying plaintiff's 6.740% annual interest rate, plaintiff's calculation of the unpaid accrued interest amount ($18,618.43) and daily interest rate ($19.99) is mathematically incorrect. See DE #20-8 at 2. Accordingly, plaintiff is instructed to supplement its submissions, via ECF, by December 17, 2021, to provide a detailed explanation of its interest calculations (including the annual interest rate(s)) and to cure any errors in its calculations.

12/14/21 Order; see also 12/20/21 Order at 1 (referencing plaintiff's failure to adequately explain its interest calculations while further instructing plaintiff to cure other errors in its submissions or risk denial of its motion). Despite having withdrawn its first motion for default judgment in order to have ample time to overhaul its grossly inadequate submissions, plaintiff has largely ignored the Court's explicit and detailed directive regarding plaintiff's defective demand for prejudgment interest. Specifically, plaintiff has failed to provide any explanation whatsoever of how the requested interest rate was determined, except for a single, conclusory statement in the Selva Affidavit, which asserts that the 6.740 percent rate is set forth in "paragraph 7B of the Equity Maximizer Agreement" (i.e., the Modified Note). See Selva Aff. ¶ 13. Plaintiff's reliance on paragraph 7B of the Modified Note totally ignores paragraph 13 of that document, which sets forth the method for calculating the "annual percentage rate" based on the margin and the "index rate" (i.e., the daily "Money Rates" table in The Wall Street Journal), which changes periodically.[16] See Modified Note ¶ 13, DE #33-19 at 39. It is not apparent how plaintiff arrived at the requested (static) interest rate, which fails to account for any variation of the annual interest rate over time.

Even assuming *arguendo* that plaintiff's requested 6.740 percent interest rate is the correct contractual rate, plaintiff's own calculations contain numerous mathematical errors.

---

[16] See Historical Prime Rate, JP MORGAN CHASE, https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited Mar. 23, 2022).

Plaintiff asserts that the 6.740 percent per annum interest rate results in a $19.99 daily interest amount, see Proposed Judgment at 3; in fact, 6.740 percent interest on the principal balance amount of $146,232.59 yields a daily interest rate of $27.00 (.0674 x $146,232.59 / 365 days = $27.00).[17]  In addition, plaintiff incorrectly calculates the total amount of interest owed on the principal balance, requesting almost $4,000.00 less than what a 6.740 percent annual rate would yield on $146,232.59, from October 25, 2018 until February 4, 2022 ($27.00 daily amount x 1199 days = $32,373.00).  In sum, based on the current submissions, it is unclear how plaintiff arrived at the interest amount, as set forth in its opaque submissions, and plaintiff's memorandum of law provides no explanation thereof; the Court therefore has no confidence in the accuracy of either the interest rate or the total amount of interest requested.

Given plaintiff's failure to cure the aforementioned deficiencies in connection with its interest calculations, even after being instructed to do so by this Court in no uncertain terms, combined with plaintiff's persistent mathematical errors, this Court recommends that plaintiff's request for $28,409.52 in contractual interest be denied.  See, e.g., Louis Hornick & Co. v. Darbyco, Inc., 12cv5892 (VSB) (DCF), 2015 WL 13745787, at *1 (S.D.N.Y. Aug. 19, 2015) (recommending that plaintiff's request for damages at the default stage be denied where the court was presented with a "hodge-podge of documents," and plaintiff failed to provide adequate explanation of its damages request, despite a prior court order "describ[ing] the inadequacy of [p]laintiff's submissions" and "specifically direct[ing p]laintiff to supplement its inquest submissions so as to show the bases for its damages calculations (and expressly

---

[17] "[T]he daily interest rate is calculated by the following formula: daily interest rate = (outstanding principal X interest rate per annum) / 365 (representing the days in the year)."  Windward Bora LLC v. Valencia, No 19-CV-4147 (NGG) (RER), 2021 U.S. Dist. LEXIS 249084, at *9 n.12 (E.D.N.Y. Dec. 31, 2021).

warn[ing p]laintiff of the potential consequences of failing to meet its burden in this regard)"), adopted, 2015 WL 9478239 (S.D.N.Y. Dec. 29, 2015); Korzeniewski v. Sapa Pho Vietnamese Rest. Inc., 17-CV-5721-MKB-SJB, 2019 WL 312149, at *11 (E.D.N.Y. Jan. 3, 2019) (recommending that the District Court deny without prejudice plaintiff's request for attorneys' fees where counsel failed to provide adequate documentation thereof, despite four court orders to do so, and counsel's failure to supplement as directed was delaying resolution of the motion for default judgment), adopted, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019); Nationstar Mortg. LLC v. Fernandez, 17-cv-404 (DRH)(SIL), 2017 WL 6767239, at *6 (E.D.N.Y. Nov. 21, 2017) ("Fernandez") ("[n]otwithstanding [p]laintiff's right to collect such amounts under the Mortgage," court recommends that plaintiff's request for damages be denied where plaintiff relied solely on conclusory allegations in its statement of damages and affidavit), adopted, 2018 WL 262837 (E.D.N.Y. Jan. 2, 2018), vacated in part on other grounds, 2018 WL 3424452 (E.D.N.Y. Mar. 20, 2018); Garden City Boxing Club, Inc. v. Borinquen 444 Ass'n, Inc., No. 05-CV-3691 (ARR)(RML), 2008 WL 842452, at *3 (E.D.N.Y. Mar. 28, 2008) (denying with prejudice plaintiff's request for damages and renewed motion for default judgment where "plaintiff did not take advantage of the opportunity it was given to cure the glaring deficiencies in its first motion for default judgment").

With respect to post-judgment interest, the Court recommends awarding "post-judgment interest to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered." Freedom Mortg. Corp. v. Jett, 18-cv-3306 (ADS)(SIL), 2019 WL 3714795, at *5 (E.D.N.Y. May 23, 2019) (awarding post-judgment interest at the federal rate in action for judgment of foreclosure

and sale), adopted, 2019 WL 3805103 (E.D.N.Y. Aug. 13, 2019); see 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.]"); Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

### C.    Costs and Disbursements

A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award.  See Louis, 2016 WL 3552143, at *10.  Indeed, the Modified Note and Modified Mortgage both provide for the award of attorneys' fees and costs in the event of default and foreclosure.  See Modified Note ¶ 19, DE #33-19 at 41; Modified Mortgage ¶ 22, DE #33-19 at 54.  Nevertheless, for the reasons explained below, the Court recommends denying in part plaintiff's request for attorneys' fees and costs.

#### i.   Attorneys' Fees

With respect to attorneys' fees, while the Complaint purports to demand attorneys' fees, see Compl. ¶ 14 & ad damnum clause (section "d"), plaintiff apparently does not seek attorneys' fees in the instant motion, see Pl. Mem. at 26 (requesting only "costs and disbursements in connection with the commencement and prosecution of this action"); see generally Statement of Damages.  Moreover, plaintiff has provided no documentation to support any request for attorneys' fees.  Therefore, plaintiff should not be awarded its attorneys' fees.

ii.  *Filing-Related Fees*

In addition, plaintiff requests $1,164.38 in fees associated with litigating this action. See Statement of Damages at 1.  This amount consists of the court filing fee of $400.00, $54.38 in search fees, $290.00 in service fees, and $420.00 for the clerk's fee for filing a notice of pendency.[18]  See id.  Reasonable and identifiable out-of-pocket costs ordinarily charged to clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiff has provided invoices and payment receipts for the filing fees for the notice of pendency, search fees, and service fees, see Statement of Damages at 4-9; thus, plaintiff's requested filing-related fees are adequately documented and recoverable litigation costs,[19] see 682 Jamaica Ave., 2010 WL 4608326, at *6; New Leadership Comm. v. Davidson, 23 F.Supp.2d 301, 305 (E.D.N.Y. 1998) (awarding filing fee).

iii.  *Costs and Disbursements*

Plaintiff also requests $19,948.35 in costs for "Property Inspections/Preservation Disbursements" for the Subject Property; $2,346.94 in hazard insurance disbursements; and $26,248.35 in tax disbursements.  See Statement of Damages at 1; Selva Aff. ¶ 14.  Although the Modified Note and Modified Mortgage provide for the reimbursement of costs and expenses (as noted above), the burden is nevertheless on plaintiff to provide sufficient documentation thereof.  See, e.g., Fernandez, 2017 WL 6767239, at *6 (without "sufficient

---

[18] The Selva Affidavit also references a $325.00 fee for "Title Search Disbursement[,]" see Selva Aff. ¶ 14, but this amount is not included in the total damages sought in the Statement of Damages, see Statement of Damages at 1-2, and no citation or documentation has been provided substantiating this cost.  The Court therefore recommends excluding this amount from the award for costs and disbursements.

[19] While plaintiff has not provided documentary evidence for payment of the $400 court filing fee, the docket reflects that this amount was in fact paid.  See DE #1.  Therefore, the Court recommends awarding costs for this filing fee as well.

documentation—such as invoices, receipts, or other documentary proof—to substantiate its requests[,]" plaintiff's reliance solely upon an affidavit and the statement of damages is insufficient to substantiate its request for an award "for insurance, tax, property preservation, and inspection advances"); Louis, 2016 WL 3552143, at *9 (denying award for costs and advances where plaintiff's affidavit failed to explain what the requested costs are or "why it is entitled to reimbursement for these charges," or how the amount was calculated).

Here, plaintiff has sufficiently demonstrated its entitlement to the requested costs for hazard insurance disbursements and tax disbursements. In his affidavit, Mr. Selva avers to the calculation of such disbursements, providing a detailed breakdown of the date and amount of each type of disbursement. See Selva Aff. ¶ 14. Moreover, these monthly disbursements appear to be reflected in the loan history records. Compare, e.g., Advances/Disbursements Records at 131 (notating a payment of $129.96 on July 16, 2019) with Selva Aff. ¶ 14 (averring that a hazard insurance disbursement in the amount of $129.96 was made on July 16, 2019). Therefore, the Court recommends awarding plaintiff $2,346.94 in hazard insurance disbursements and $26,248.35 in tax disbursements.

In contrast, plaintiff has failed to demonstrate its entitlement to $19,948.35 in costs related to "Property Inspections/Preservation Disbursements." Statement of Damages at 2. First, plaintiff does not particularize the costs incurred for the inspection and preservation of the Subject Property. Unlike the accounting of the hazard insurance and tax disbursements, plaintiff also fails to provide a breakdown of inspection and preservation costs or any documentation thereof, such as paid invoices or bills. Despite having been directed to submit evidence in support of this particular request for costs and to cure the deficiencies related

thereto, <u>see</u> 8/2/21 Order, plaintiff continues to rely solely on the sworn statements of its loan servicer and loan history records, <u>see</u> Letter Regarding Costs (Aug. 13, 2021) at 1, DE #24; Pl. Mem. at 23-26.  But Mr. Selva does not explain how plaintiff arrived at the $19,948.35 amount, <u>see</u> <u>generally</u> Selva Aff., and the loan history records do not clearly identify the inspection and preservation costs, <u>see</u> <u>generally</u> Advances/Disbursements Records.  Plaintiff's documentation is thus inadequate to support an award of $19,948.35 in costs for property inspections and preservation disbursements.  <u>See</u> <u>Louis</u>, 2016 WL 3552143, at *9.

For these reasons, this Court recommends awarding plaintiff a total of $28,595.29 for costs and disbursements associated with the Subject Property.

### D.    Judgment of Foreclosure and Appointment of Referee

Finally, plaintiff requests a judgment of foreclosure and the appointment of a referee to conduct the sale of the Subject Property.  <u>See</u> Proposed Judgment at 3.  As previously noted, "once a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor."  <u>United States v. Watts</u>, No. CV 13-3211(ADS)(WDW), 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014) (citations omitted), <u>adopted</u>, 2014 WL 4293815 (E.D.N.Y. Aug. 28, 2014).

Here, plaintiff has provided the Court with the Modified Note, Modified Mortgage, and proof of default, and defendants, having failed to appear, have made no affirmative showing to overcome plaintiff's prima facie entitlement to a judgment of foreclosure.  Accordingly, this Court respectfully recommends that a judgment of foreclosure and sale of the Subject Property be entered as set forth in the Proposed Judgment, except that damages be awarded only against

Mr. Swezey, in the total amount of $175,992.26, plus statutory interest as described above. See generally Proposed Judgment. This includes the appointment of Steven P. Bertolino, Esq. as plaintiff's referee as to the Subject Property's public auction, and that the sale's proceeds be applied to the amount owed on the Modified Note. The public auction is to be held outside the Central Islip Courthouse of the Eastern District of New York, located at 130 West Main Street, East Islip, New York 11730.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiff's motion for default judgment against the two defendants be granted in substantial part but that damages be awarded against Mr. Swezey alone, as follows: $146,232.59 in unpaid principal; $1,164.38 in filing-related fees; $28,595.29 in costs and disbursements; and interest at the statutory rate following the entry of judgment. For the reasons previously described, the Court further recommends that plaintiff's request for contractual interest on the principal balance be denied. Finally, the Court recommends that the District Court order the foreclosure and sale of the Subject Property located at 64 Highland Avenue, Patchogue, New York 11772, in the form proposed by plaintiff in its Proposed Judgment, subject to the modifications outlined in this Report and Recommendation.

Any objections to this Report and Recommendation must be filed with the Honorable Frederic Block on or before April 11, 2022. Failure to file objections in a timely manner may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is respectfully requested to docket this Report and Recommendation into the

ECF court file and to send copies to defendants at the following addresses:

      Allen T. Swezey
      3412 Fox Ridge Court
      Dover, PA 17315

      Elizabeth Swezey
      7152 Skylark Drive
      Spring Hill, FL 34606

      Allen T. Swezey and Elizabeth Swezey
      64 Highland Avenue
      Patchogue, NY 11772

**SO ORDERED.**

**Dated:**    **Brooklyn, New York**
         **March 24, 2022**

                         /s/ ***Roanne L. Mann***
                         **ROANNE L. MANN**
                         **UNITED STATES MAGISTRATE JUDGE**